FILED
SUPERIOR COURT
OF GUAM

2019 JAN 14 PM 3: 25

CLERK OF CO...

BY:

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| In the Matter of DAVID HIGHSMITH, MONTY R. MAY, R. HAPPY RONS, SHANNON TAITANO, and ROBERT M. WEINBERG | Special Proceedings Case No. SP0071-17 |
| Petitioners, | |
| vs. | **DECISION AND ORDER** |
| CIVIL SERVICE COMMISSION, | |
| Respondent, | |
| ATTORNEY GENERAL'S OFFICE | |
| Real Party in Interest. | |

## INTRODUCTION

This matter is before the Honorable Michael J. Bordallo. Petitioners David Highsmith, Monty R. May, R. Happy Rons, Robert M. Weinberg, and Shannon Taitano ("Petitioners") are pro se litigants. The Civil Service Commission ("CSC" or "Respondent") is represented by Eric D. Miller, Administrative Counsel of the Guam Civil Service Commission. Petitioners argue that they were improperly slotted on the pay scale as government employees and have moved for summary judgment. Having reviewed the moving papers, arguments, record, and applicable law, the Court now issues this Decision and Order.

## BACKGROUND

This matter arises out of Petitioners' May 31, 2017 Verified Petition for Judicial Review ("Petition") naming the CSC as Respondent. In that Petition, Petitioners requested that this Court review decisions by the CSC related to the Competitive Wage Act of 2014 ("CWA"). On June 26, 2017, Petitioners filed a pleading that combined the Petition with a civil complaint naming as Defendants the OAG along with Elizabeth Barrett-Anderson in her official capacity as Attorney General of Guam. This hybrid pleading was titled the Amended Verified Petition for Judicial Review and Verified Complaint for Declaratory and Injunctive Relief. Having added a complaint to the petition, Petitioners then referred to themselves as "Petitioner-Plaintiffs." Respondent filed a Motion to Dismiss on Aug 28, 2017 pursuant to Rule 12(b)(6) of the Guam Rules of Civil Procedure Rule ("GRCP"), but this Court denied the Motion on Nov. 21, 2017.

Four of the five Petitioner-Plaintiffs moved for partial summary judgment on June 14, 2018. The next day, June 15, 2018, the fifth Petitioner-Plaintiff also moved for partial summary judgment. On July 13, 2018, Defendants filed a Motion to Strike Multiple Motions for Partial Summary Judgment as well as, in the alternative, an Opposition to Plaintiffs' Motions for Partial Summary Judgment and a Cross-Motion for Partial Summary Judgment. On Aug. 10, 2018, Petitioner-Plaintiffs filed an Opposition to the Motion to Strike. Meanwhile, on July 11, 2018, Defendants filed a Motion to Dismiss Plaintiff's Complaint for Declaratory and Injunctive Relief. Petitioner-Plaintiffs filed an Opposition on Aug. 7, 2018. On July 31, 2018, the CSC filed a Renewal of Motion to Dismiss as a Motion for Summary Judgment. Petitioner-Plaintiffs filed an Opposition on Aug. 28, 2018. On Nov. 30, 2018, this Court issued a Decision and Order declining to recognize the hybrid petition amended to include the civil complaint. The Court dismissed the civil complaint, stating that it would address only those pleadings

associated with the Petition. The Court will therefore refer to the party only as "Petitioners." The matters before the Court now are Petitioners' Motion for Partial Summary Judgment and Respondent CSC's Renewal of Motion to Dismiss as a Motion for Summary Judgment.

## FACTS

Petitioners, all attorneys at the OAG, argue that they receive less compensation at the OAG than they should as a result of improper and unlawful implementation of the CWA. Respondent in turn argues that Petitioners were not demoted and furthermore have not brought an actionable claim.

On February 14, 2014, the CWA went into effect, with the purpose of increasing salaries for government employees. Government of Guam Competitive Wage Act of 2014 Pub. L. 30-196 As Amended By Pub. L. 32-068 (Sep. 11, 2013). It was the first major overhaul of pay structure for government employees since the Government of Guam Unified Pay Schedule was implemented on October 1, 1991. Id. at 5. In 2008, the government of Guam commissioned a study of all government of Guam positions by an outside consultant, the Hay Group, Inc. After comparing the government of Guam to approximately 10 relevant market sources, "Hay Group Inc. found that [the Government of Guam's] salary structure was on average 59% behind market." Id. The study resulted in the Government of Guam Competitive Wage Act of 2011, but due to lack of funding, the act was suspended until sufficient funds became available and "the relative financial stability of the Government of Guam was restored." Id. at 4. Finally, on February 14, 2014, the act was implemented as the Government of Guam Competitive Wage Act of 2014, with the purpose of increasing salaries using the appropriated $7,055,357. Id. Petitioners were working for the Government of Guam before and at the time the CWA was implemented. Because the grades and steps of the new system do not have a mathematical correspondence with those of the old system, nor do they follow a pattern based on the old

system, each employee had to be re-slotted in the new system. To do this, all employees were slotted at the step in the grade and step assignment closest to and not less than their current rate of pay.

The old pay scale is represented here:

| Pre-CWA Pay Scale | | | |
|---|---|---|---|
| | | Attorney I | Percent Increase from Previous Step |
| Step 1 | $40,352.00 | Under 1 year as an attorney | - |
| Step 2 | $42,874.00 | More than 1 but less than 2 years as attorney | 6.25% |
| Step 3 | $45,396.00 | More than 2 but less than 3 years as attorney | 5.88% |
| | | Attorney II | |
| Step 1 | $47,008.00 | More than 3 but less than 4 years as attorney | 3.55% |
| Step 2 | $49,773.00 | More than 4 but less than 5 years as attorney | 5.88% |
| | | Attorney III | |
| Step 1 | $51,723.00 | More than 5 but less than 6 years as attorney | 3.92% |
| Step 2 | $54,765.00 | More than 6 but less than 7 years as attorney | 5.88% |
| Step 3 | $59,329.00 | More than 7 but less than 8 years as attorney | 8.33% |
| | | Attorney IV | |
| Step 1 | $62,114.00 | More than 8 but less than 9 years as attorney | 4.69% |
| Step 2 | $68,493.00 | More than 9 but less than 10 years as attorney | 10.27% |
| Step 3 | $72,522.00 | More than 10 but less than 11 years as attorney | 5.88% |
| Step 4 | $75,208.00 | More than 11 but less than 12 years as attorney | 3.70% |
| Step 5 | $77,894.00 | More than 12 but less than 15 years as attorney | 3.57% |
| Step 6 | $80,580.00 | More than 15 years as attorney | 3.45% |
| Step 6+ | 16 yrs. or more as an attorney and has reached the level of Attorney IV Step 6, shall thereafter receive a pay increase of 3.5% every two (2) years of service as a government of Guam Attorney. | | 3.5% increase every two years |
| See 4 Guam Code Ann. § 6208 | | | |

The new pay scale under CWA is represented in a table here, along with a second table demonstrating the percent increase in pay from each step to the next highest step:

(Tables appear on the following page.)

| | CWA Pay Scale | | | | | |
|---|---|---|---|---|---|---|
| | Attorney Level 1 | Attorney Level 2 | Attorney Level 3 | Attorney Level 4 | Attorney Level 5 (Managing) | Chief Deputy Attorney General |
| Step 1 | $50,825 | $57,375 | $66,600 | $75,780 | $85,950 | $97,470 |
| Step 2 | - | $59,426 | $68,981 | $78,489 | $89,022 | $100,954 |
| Step 3 | - | $61,550 | $71,446 | $81,294 | $92,204 | $104,563 |
| Step 4 | $53,500 | $63,750 | $74,000 | $84,200 | $95,500 | $108,300 |
| Step 5 | - | $67,427 | $78,268 | $89,057 | $101,009 | $114,547 |
| Step 6 | - | $71,316 | $82,783 | $94,194 | $106,835 | $121,154 |
| Step 7 | - | $75,430 | $87,558 | $99,627 | $112,997 | $128,142 |
| Step 8 | - | $79,781 | $92,608 | $105,373 | $119,515 | $135,534 |
| Step 9 | - | $84,383 | $97,950 | $111,451 | $126,409 | $143,351 |
| Step 10 | - | $89,250 | $103,600 | $117,880 | $133,700 | $151,620 |
| See Competitive Wage Act of 2014, Report Exhibits, 7 | | | | | | |

| CWA Pay Scale: Percent Increase from Each Step to the Next Highest Step | | | | | | |
|---|---|---|---|---|---|---|
| | Attorney Level 1 | Attorney Level 2 | Attorney Level 3 | Attorney Level 4 | Attorney Level 5 | Chief Deputy Att'y General |
| Step 1 | $50,825 | $57,375 | $66,600 | $75,780 | $85,950 | $97,470 |
| Step 2 | - | 3.57% | 3.57% | 3.57% | 3.57% | 3.57% |
| Step 3 | - | 3.57% | 3.57% | 3.57% | 3.57% | 3.57% |
| Step 4 | 5.26% | 3.57% | 3.57% | 3.57% | 3.57% | 3.57% |
| Step 5 | - | 5.77% | 5.77% | 5.77% | 5.77% | 5.77% |
| Step 6 | - | 5.77% | 5.77% | 5.77% | 5.77% | 5.77% |
| Step 7 | - | 5.77% | 5.77% | 5.77% | 5.77% | 5.77% |
| Step 8 | - | 5.77% | 5.77% | 5.77% | 5.77% | 5.77% |
| Step 9 | - | 5.77% | 5.77% | 5.77% | 5.77% | 5.77% |
| Step 10 | - | 5.77% | 5.77% | 5.77% | 5.77% | 5.77% |
| See Competitive Wage Act of 2014, Report Exhibits, 7 | | | | | | |

The pre-CWA pay scale used Roman numerals to identify the grade, while the CWA pay scale uses standard Arabic numerals. Under the old scale, any step in a given grade would represent more pay than any step in any lower grade. For example, all steps of Attorney III made more money than all steps of Attorney II. In contrast, under the new scale, a high step under one grade can make more than a low step in a higher grade. For example, an Attorney Level 2 at Step 10 makes more money than an Attorney Level 4 at Step 4.

Under the CWA scale, the pay continually increases at a consistent percentage with each step, either a 3.57% increase for Steps 2 through 4 across all levels, or a 5.77% increase for Steps 5 through 10 across all levels (with one exception, the jump from Level 1 Step 1 to Step 4, a 5.26% increase). Under the old scale, the percent increases with each step were inconsistent and had no apparent pattern, ranging from an increase of 3.45% to as high as 10.27% and everything in between. Under the old scale, there were a total of four grades: I, II, III, and IV. Under the CWA scale, there are five grades as well as a sixth grade for the chief deputy attorney general. Before the CWA, all Petitioners were slotted at grade IV, the highest grade on that scale. Under CWA, Petitioners are now slotted at grade 4, the second highest level, or third highest level, including chief deputy attorney general. Under the CWA, each Petitioner was re-slotted in a new step that was technically a lower step number than under the old system, as the chart below shows:

| Petitioner | Pay Slot Before CWA | Pay Slot After CWA | Pay Before CWA | Pay After CWA | Percent Increase in Pay From Pre-CWA to Post-CWA |
|---|---|---|---|---|---|
| Monty R. May | IV-14 | 4-10 | $106,108 | $117,880 | 11.09% |
| R. Happy Rons | IV-13 | 4-8 | $102,520 | $105,373 | 2.78% |
| David Highsmith | IV-12 | 4-8 | $99,053 | $105,373 | 6.38% |
| Robert M. Weinberg | IV-10 | 4-7 | $92,467 | $99,627 | 7.74% |
| Shannon Taitano | IV-5 | 4-3 | $77,894 | $81,294 | 4.36% |
| See Declaration of Employees in Support of Petitioner-Plaintiffs' Motion for Partial Summary Judgment, Exhibits B-F. | | | | | |

There was a brief transition period after the CWA was implemented on February 14, 2014 during which some Petitioners received a transitional salary different than stated in the chart above. But

within two months, by April 1, 2014, all Petitioners were receiving the "Pay After CWA" salary in the chart.

On the old scale, all Petitioners except Shannon Taitano had reached and exceeded the final step at the highest pay grade, Attorney IV Step 6. That meant that each of them had moved to step 6+ to calculate their pay, a step that stated employees would receive a 3.5% increase in pay every two years. Although 4 G.C.A. § 6208 does not explicitly label each successive two-year period in 6+ as a new step, Petitioners refer to these two-year periods as additional steps. In this way, Petitioner Monty R. May reached Attorney IV Step 14 on the old scale, meaning after he reached Step 6, he worked eight two-year time periods to reach Step 6 + 8, or what Petitioners refer to as Step 14. After Step 6, R. Happy Rons worked seven two-year periods to reach Step 6 + 7 or Step 13, David Highsmith worked six two-year periods to reach Step 6 + 6 or Step 12, and Robert M. Weinberg worked four two-year periods to reach Step 6 + 4 or Step 10. Petitioner Shannon Taitano had not yet reached the 6+ designation under Attorney IV.

Petitioners have identified another Assistant Attorney General they call "DT" who was at Step IV-1 before the CWA, earning $62,114, and who was re-slotted with the CWA to Attorney Level 4 Step 1, earning $75,780. Petitioners point out that this is a 22% pay increase. See Declaration of Employees 7. As the chart above demonstrates, the largest pay increase for any Petitioner after being re-slotted was an 11.09% increase, and the smallest increase was 2.78%. Petitioners claim that the CWA was improperly and unlawfully implemented because they were each slotted on the pay scale without regard to knowledge, ability, and skill, as required by law. They argue that "[t]here is no dispute that the position to which Employees were slotted is not the proper position and that their compensation is less than the compensation to which they are entitled." Petitioner-Plaintiffs' Mot. for Partial Summ. J. 4. They argue that the method used for slotting under the CWA was unlawful, inorganic, and unconstitutional and that they have a

protectable interest in the compensation which they would have received had they been properly slotted. Petitioners also argue that their status on the new pay scale was a demotion because their step number on the new scale was lower than their step number on the old scale. In general, they argue that they should have received a higher pay increase than they got. Petitioners claim to have exhausted their administrative remedies in this dispute, having brought both adverse actions and grievances with the CSC. Respondent CSC argues that the re-slotting of Petitioners was not a demotion since the adjustment giving them a lower step was not the result of disciplinary action but rather a result of reworking the grade and step apparatus and assigning employees to an appropriate slot on the new scale. Respondent also argues that Petitioners have not brought an actionable claim.

## ISSUE

1. Whether there is a genuine issue as to material fact about whether Petitioners are receiving proper compensation under the new CWA pay scale.

2. Whether there is a genuine issue as to material fact about whether Petitioners' re-slotting under the CWA constituted a demotion.

3. Whether there is a genuine issue as to material fact about whether Petitioners exhausted their administrative remedies.

## PRINCIPLES OF LAW

Summary judgment is regulated by Rule 56 of the Guam Rules of Civil Procedure. Guam R. Civ. P. 56. Summary Judgment is appropriate if the pleadings, deposition, interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Guam R. Civ. P. 56(c); Izuka Corp. v. Kawasho International, (Guam), Inc., 1997 Guam 10 ¶ 7. In addition,

a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).

In rendering its decision on a motion for summary judgment, a court must draw inferences and view the evidence in a light most favorable to the non-moving party. Bank of Guam v. Flores, 2004 Guam 25. If, however, the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the pleading but must produce at least some significant probative evidence to support the pleading. Edwards v. Pacific Financial Corporation, 2000 Guam 27 ¶ 7. Consequently, a court's "ultimate inquiry is to determine whether the 'specific facts' set by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." Id.

Pursuant to the Uniform Position Classification and Salary Administration Act of 1991, slotting of employees into the proper step on the pay scale "shall include all experience and seniority credits." 4 G.C.A. § 6208(d). Also, the definition of "demotion" under the Guam Department of Administration Rules and Regulations is as follows:

> The involuntary reduction in status of an employee for disciplinary reasons from a position which he occupies in a specific class, to a position in another class, where the maximum rate of pay is less than the maximum rate of pay for the class which he had held, or a reduction to a lower salary step in the same class.

DOA Rule 11.302. Demotion is also defined in the Policies and Procedures issued by the Dept. of Administration to regulate the implementation of the CWA. There, demotion is separated into "Voluntary Demotion" and "Involuntary Demotion." Involuntary Demotion is defined as "a

move from one position to another, which is evaluated at a lower pay grade than the previous for cause." Government of Guam Competitive Wage Act of 2014, Department of Administration, Policies and Procedures 11. Under Guam law, "an employee in the classified service who is ... demoted ... shall be given immediate notice of the action, together with a specific statement of the charges upon which such action is based ...." 4 Guam Code Ann. § 4406(a). The Guam Supreme Court also established that "a member of the classified service against whom management has taken the personnel action of suspension, demotion or dismissal is entitled to appeal the action to the CSC as an adverse action even if the action was not predicated upon some malfeasance or incompetence on the job by the employee." Blas v. Guam Customs & Quarantine Agency, 2000 Guam 12, ¶ 17. In Blas, the classified employee and Customs Officer, Mr. Blas, was appointed to a new leadership role in his agency, and two days later, his supervisor was replaced. Two days after that, the new supervisor removed Mr. Blas from his new leadership role and reinstated him to his former position. The Guam Supreme Court held that Mr. Blas's appointment to the leadership role was a promotion, and that his removal from the role four days later was an adverse action, as explained above, even absent any malfeasance or incompetence on his part.

With regard to administrative remedies, the doctrine of exhaustion of administrative remedies provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Barrett-Anderson v. Camacho, 2015 Guam 20, ¶ 31. "Generally, when a statute requires exhaustion of administrative remedies, a party's failure to exhaust deprives the court of subject matter jurisdiction." Id. However, "[u]nder the futility exception, a party need not exhaust administrative remedies if the record reflects that it would be futile to do so." Id. The administrative remedy available to employees

who received an adverse action is to appeal the adverse action to the Civil Service Commission ("CSC"). The CSC has the duty to

> hear appeals from the adverse actions taken to suspend, demote or dismiss an employee from the classified service if such right of appeal to the Commission is established in the personnel rules governing the employee; however, it may not hear any appeal of an action taken to suspend, demote or dismiss an employee of the government of Guam who has not been hired through the competitive hiring procedures of the personnel rules of the government of Guam, as such personnel rules required at the time of the hiring of the employee, nor any unclassified employee;

4 Guam Code Ann. § 4403. The process for an employee to appeal to the CSC is described here:

> (c) The employee within twenty (20) days of effective date of the action, may appeal to the Commission or appropriate entity by filing that person's written answer to the charges against the employee, regardless whether the employee has tendered any resignations, which shall have no effect upon the employee's appeal rights ....

> (d) The Commission or appropriate entity shall then set the matter for hearing as expeditiously as possible. The employee, or that person's representative, shall be given the opportunity to inspect any documents relevant to the action which would be admissible in evidence at the hearing, and to depose, interview or direct written interrogatories to other employees having knowledge of the acts or omissions upon which the dismissal, demotion or suspension is based. The Commission or appropriate entity may sustain, modify or revoke the action taken. The decision of the Commission or appropriate entity shall be final, but subject to judicial review.

4 G.C.A. § 4406.

The CSC also has the duty "to hear appeals of ... grievance complaints ...of an employee from the classified service if such right of appeal to the Commission is established in the personnel rules governing the employee." 4 Guam Code Ann. § 4403. The personnel rules governing the employees here are the Department of Administration Personnel Rules and Regulations ("DOAPRR"). The DOAPRR Rule 12.100 defines a grievance as follows:

> A grievance is any question or complaint filed by a permanent employee alleging that there has been a misinterpretation, misapplication or violation of a personnel

statute, rule, regulation, or written policy which directly affects the employee in the performance of his office duties; or that he has received prejudicial, unfair, arbitrary, capricious treatment in his working conditions, or work relationships.

Guam Department of Administration Personnel Rules and Regulations Rule 12.100. The DOAPRR also lists several actions not covered by the grievance procedures, and one of the exclusions is "[a]ppeals from classification determinations." Id. at 12.301(E).

## ANALYSIS

There is no genuine issue as to material fact about whether Petitioners are being paid the right amount under the CWA, chiefly because Petitioners have not stated the grades and steps to which they believe they should have been slotted, and the new pay scale has no mathematical correspondence or connection with the old scale. If Petitioners wish to seek a remedy, they must state clearly the remedy they seek, specifically, the pay scale to which they should have been assigned. Instead, they repeatedly give vague assertions that they should have been paid more, such as their statement that they "were given smaller raises of approximately $500 in 2014 instead of significantly greater raises as the CWA mandated." Petitioner-Plaintiffs' Mot. for Partial Summ. J. 3. But they never state where on the pay scale they believe they should be. They argue that Management should slot them according to merit and experience, but because of the lack of connection between the old scale and the new scale, they cannot demonstrate that they were not slotted according to merit and experience.

The stated method for choosing each employee's new slot under the CWA was as follows: "Incumbents under the NPP, EDU, and ATTY Pay Plans shall be slotted a [sic] the step in the grade assignment closest to and not less than their current rate of pay." Government of Guam Competitive Wage Act of 2014, Department of Administration, Policies and Procedures 3. Under the previous pay scale in 4 G.C.A. § 6208, the pay schedule "was based on years of

creditable working experience as a means of establishing what level of attorney an incumbent was slotted to and what step in that level an attorney would finally slot to." Competitive Wage Act of 2014 at 10. This means that prior to the CWA, attorneys, including Petitioners, were slotted on the pre-CWA pay scale according to merit and experience. Petitioners argue that under the CWA, they were slotted "without regard to knowledge, ability and skill." Petitioner-Plaintiffs' Motion for Partial Summary Judgment 8. They repeat several times that "closest to and not less than their current rate of pay" is a mechanism that violates the merit system for hiring government employees.

In their attempt to argue that they are being paid incorrectly, Petitioners rely almost exclusively on the fact that their step numbers under the CWA pay scale are technically lower than their step numbers under the previous system. But the new scale is not based on the old scale, nor does there appear to be any obvious continuity between the two. The number of grades and steps are different on each scale, and the percent increases with each step are different between the old and new scales. The old system had four grades and the new one has six. The old one had steps that capped out at 6+ under Attorney IV. The new system caps out at Step 10 under Level 6. Under the old system, the percent increases in pay with each step varied widely and have no correlation with the percent increases under the new system, which are uniform and predictable. Petitioners seem to take for granted that the old Attorney grade IV corresponds with the new Attorney Level 4. Their argument assumes that they have been in the same grade under both systems, and their positions were lowered within that grade upon implementation of the CWA. However, the fact that both systems have a grade that uses the number 4 (or IV) does not mean that IV and 4 are equivalent on the two scales. For example, a step IV-12 on the old system does not correspond with a step 4-12 on the new system. For one thing, there is no step 4-12 on the new system. For another, Attorney IV is the highest possible

grade under the old system, while Level 4 is the third highest grade under the new system, which includes Level 6 for Chief Deputy Attorney General, a grade previously housed under Attorney IV. Simply the fact that Petitioners' step numbers are lower means very little since the grades and levels under each system to not correspond, and the new system was not built to have a mathematical correlation with the old one.

There is no genuine issue as to material fact as to whether Petitioners were demoted. According to several definitions of demotion under statute, regulations, and case-law, they were not. There was no disciplinary action taken, which is a requirement to be considered a demotion according to the Guam Department of Administration Rules and Regulations. Its definition of demotion is restated here:

> The involuntary reduction in status of an employee for disciplinary reasons from a position which he occupies in a specific class, to a position in another class, where the maximum rate of pay is less than the maximum rate of pay for the class which he had held, or a reduction to a lower salary step in the same class.

DOA Rule 11.302. Petitioners have focused on the last phrase, "or a reduction to a lower salary step in the same class" as if that phrase stands alone. In doing so, Petitioners appear to be arguing that any reduction of an employee's salary to a lower step in the same class would be a demotion, regardless of the reason. However, this is an incorrect interpretation of the definition. To make the sentence clearer, it is helpful to remove the modifier "where the maximum rate of pay is less than the maximum rate of pay for the class which he had held." Without the modifying phrase, the definition of demotion reads: "The involuntary reduction in status of an employee for disciplinary reasons from a position which he occupies in a specific class, to a position in another class … or a reduction to a lower salary step in the same class." In other words, the introductory phrase "The involuntary reduction in status of an employee for disciplinary reasons" applies to both employees reduced from one class to another class as well

as to employees who are reduced a salary step in the same class. Under either definition, disciplinary action is required. But in the present case, no disciplinary action was taken against Petitioners.

In the Dept. of Administration's Policies and Procedures, "involuntary demotion" is defined as "a move from one position to another, which is evaluated at a lower pay grade than the previous for cause." Petitioners cannot claim to be demoted under this definition for two reasons. First, they were not moved from one position to another "for cause." Second, Petitioners' new position cannot be said to have been evaluated at a lower pay grade than their previous position because the pre-CWA pay scale and the current CWA pay scale have little or no correspondence with each other, as previously explained.

Petitioners use the Blas case to demonstrate that even absent disciplinary action, they have an adverse action, and therefore, the CSC should have heard their case on the merits. However Blas can be distinguished from the present case. Mr. Blas was promoted to a new supervisory position and then later moved back down to his old position. The Guam Supreme Court found this to be a demotion, even absent disciplinary action. In the present case, the Petitioners never changed positions or responsibilities, and they never received new titles. They simply received a salary increase and were re-slotted on a new pay scale. While this Court acknowledges that pay raises among the attorneys were not uniform upon implementation of the CWA, and there appears to be at least one significant disparity in percent of pay increase (employee "DT," according to Petitioners), there is no genuine dispute as to any material fact with regard to the issue of demotion. Viewing the evidence in a light most favorable to the non-moving party, Petitioners were not demoted.

Viewing the evidence in the light most favorable to the non-movant, there is no genuine dispute as to whether Petitioners have exhausted their administrative remedies. This Court finds

that they have. As already stated, the CSC properly found that it does not have jurisdiction on the adverse action appeal because there was no demotion. Petitioners alternatively sought to have the CSC decide their case by bringing their dispute as a "grievance" rather than an adverse action. However Rule 12.301(E) specifically does not allow grievance appeals of classification determinations. The core issue in this case is a classification determination: whether Petitioners were properly classified on the pay scale upon implementation of the CWA. Therefore, the CSC correctly determined that it does not have jurisdiction over the grievance appeal. Respondent CSC suggested no additional administrative remedies available to Petitioners. The Court finds that Petitioners' administrative remedies have been exhausted, and this case is ripe for judicial review, a case in which Petitioners would have to at least establish the grade and step to which they believe they ought to have been slotted.

**CONCLUSION AND ORDER**

For the reasons set forth above, the Court **GRANTS** summary judgment to Respondent CSC as to whether Petitioner was demoted and as to whether Petitioner is being paid properly under the CWA. The Court also **GRANTS** summary judgment to Petitioners as to whether they have exhausted all administrative remedies.

SO ORDERED, this _14_ day of _January_ 2019.

**SERVICE VIA COURT BOX**
I acknowledge that a copy of the original hereto was placed in the court box of:

- Att. Gen-Civil Lit. _____
- Mineveli Hankin, PC.

Date: 1/14/19 Time: 3:70

**Linda M. Perez**
Deputy Clerk, Superior Court of Guam

**SERVICE VIA COURT BOX**
I acknowledge that a copy of the original hereto was placed in the court box of:

- Gu Civil Service Comm.
- _____

Date: 4/14/19 Time: 3:30 pm

**Linda M. Perez**
Deputy Clerk, Superior Court of Guam

HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

1·14·19
DATE